Tiffany Vesterman v. the Department of Education of the City of New York Good morning, Your Honors. May it please the Court, Natalia Kapitonova for appellant, Tiffany Vesterman. I would like to reserve two minutes for rebuttal. Your Honors, this case should be reversed for two clear reasons. The first one is that appellant alleged a plausible First Amendment religious accommodation claim, and she was not given the proper inferences in her favor. And the second is that the case was prematurely dismissed in terms of the 1983 due process claim when she alleged the problem called designation, even though she alleged clearly the stigma plus loss of employment opportunities and no meaningful opportunity to clear her name. Here she was a practicing Catholic who held a sincere belief against taking the COVID vaccine. She made an accommodation, a reasonable accommodation. The city's response was a boilerplate. She asked for an accommodation, yes. A religious exemption, Your Honor. No, she wanted to do the work. She only didn't want to take the vaccine. However, this Court held that at the very least, there should be an interactive process. But instead, she was given a vaxed religious exempt general denial. I'm sorry about interactive process. I thought we required an interactive process under the Americans with Disabilities Act, but I don't know of a freestanding requirement that an employer engage in an interactive process for the kind of claims you're making, the constitutional claims. What do you point to in support? Yes, Your Honor. So this very Court in 2021 held that the accommodation procedures of the city were not neutral, and there should be a fresh consideration of religious exception at the very least. Here she was terminated two months after, and there was no fresh consideration or any religious exception whatsoever. What authority are you pointing to about what the Court held in 2021? Sure. So I'm talking about Cain versus de Blasio. If you would like the... I know the side of Cain. Cain was on a preliminary injunction motion, right? And it said that certain elements that had been required by the process, for example, that the religious leader had spoken against the vaccine or in favor of the vaccine, that that wouldn't be sufficient. But that was really a very special case. That wasn't a freestanding holding that the school system needed to engage in interactive process on religious freedom claims, was it? Your Honor, well, that case, in terms of the religious accommodation, it held that in the which, in this case, there was no consideration whatsoever. However, we also cited Baker versus Home Depot, and that Court held that the interactive process is required. The Supreme Court in Masterpiece Cake Shop also forbid government hostility towards religious exercise. But my point here, Your Honor, is that at the very least, the inferences in favor of the appellant should have been drawn here. There was no opportunity to that. Not only that, but this case was a state court's case that was taken to federal court. Appellant requested to amend the complaint, and that request was ignored. So she never Did she actually move to amend the complaint? I thought there was a pre-motion conference letter suggesting she might want to, but there was never actually a motion to amend and it was submitted in a proposed amended complaint submitted. Am I wrong? No, Your Honor, you're not wrong. There was a request, but the court didn't, in that request, the court directed the city to move to dismiss, but it never engaged in the opportunity whether appellant should move to amend, should make a motion. There was no discussion at all whatsoever about that. Counsel, can I direct your attention to New Yorkers for Religious Liberty? That's a recent case of this court where this court held that affirmed a denial of the same exact accommodation for Department of Education employees irrespective of their sincerely held beliefs on the basis of undue hardship. In other words, they, this court recognized that irrespective of someone's truly felt religious beliefs, if there was undue hardship, that the denial was justified. And that case seems to be exactly like this case. How do you, your client, overcome the issue of undue hardship? Yes, Your Honor. So about that case, a plaintiff must allege non-conclusory facts suggesting that the undue hardship finding was erroneous or pretextual. Here, the appellant did that. The denial form is a preprinted generic template. That you can see in the record 112 to 113. There was no interactive process. Of course, she already had worked remotely for over a year. And there were reasonable alternatives. She could have double masked. She could have done weekly testing. She could have done things like that. But she was never given that opportunity. In Baker, the employer is also required to engage in some sort of discussion. But here, the city had a complete failure to engage. I want to ask you about the stigma plus argument that you made. Let's assume it was actually alleged, which the district court, I think, assumed or implied if it had been alleged. Has your client alleged a reputation tarnishing statement that's actually false? And if so, what is the false statement? Yes, Your Honor. Thank you for that question. The false statement is that in the problem code, she's coded as having committed misconduct. Okay? And that tarnished her reputation and now she's unemployable. Would Brexit say misconduct? The code. A code, when the code Right. But the code didn't say misconduct, right? The code could be she's just not qualified for the position because she hasn't vaccinated. Well, when you have a code and then you get nominated for any job whatsoever, they make a call to the department and then they disclose the problem with the code. I mean, in this case, my understanding is she has a misconduct code and that's in R3637. Another problem is that the code is disseminated to the FBI, to the State Division of Criminal Justice Services. So it really tarnishes her reputation. It renders her unemployable, not only with the New York City Department of Education, which is the biggest employer of obviously a teacher, but also with all its vendors. Now, the New York City Department of Education, that's business with private schools, et cetera. So in other words Are you saying she's not employable now? The mandate's been lifted, right? The mandate was teachers had to vaccinate to keep students safe, to keep staff safe during the height of COVID. The mandate has been lifted. Are you saying, one, that that being on that list was false? And two, that it's going to keep her from getting future jobs? Yes, Your Honor. If she's coded, she cannot be employed here. She cannot be employed by New York City Department of Education and all its vendors who are private schools. So in other words, now she cannot make a living as a teacher. So that's a big deal in Where do you allege that the code is actually made public? That's part of a stigma plus claim. Where is, can I call up and ask the city for information about your client and they would give me the problem code? Usually, Your Honor, when you're nominated for a job, then the person that nominates you, let's say she applies for a private school. She gets nominated and offered a job. Then the principal of that school will call about the code. And then when they see that there is a code, she will not be able to accept that nomination. In addition to that, because this case was on a motion to dismiss, there, in the record, there are two affidavits. The affidavits of Combier, in the record, 172 to 173, and the affidavit of an attorney black, an R-155. They both talk about the code. They both say that the code goes to the FBI. I'm sorry. We're on a motion to dismiss, right? So why would we be looking at affidavits? Motion to dismiss. Your Honor, because at the very least, when you look at that, you can see that she alleged a possible claim of stigma plus. In the sense that a false statement of misconduct impugning her professional reputation was made the stigma. Then determination of permanent exclusion from employment, which is further explained in the affidavits. And then she had no process whatsoever. This Court has held under Siegel that you have to meet all those requirements in the hearing is required when the government statements impugns a teacher's professional reputation. Here she was a tenured teacher and she was given none. She received no notice and nothing at all, whatsoever. In addition to that, yes? Counsel, we're going over time, but you have reserved two minutes for rebuttal. So if you want to just wrap up your primary argument and you'll have your full time for rebuttal. Sure. So because this case is on a motion to dismiss, all the facts should have been viewed in the most favorable light to the appellant, and they were not. For that, at the very least, the case should be reversed. And at the very least, the appellant should have been given an opportunity to amend the complaint. And the last point is that the Court engaged in an error because it really engaged in a discussion of a Title VII claim that my client never brought, and that contaminated the whole analysis. Thank you. Thank you. And again, you've saved two minutes for rebuttal. Good morning, Your Honors. May it please the Court, Hannah Sorokin for the FLEs. Could you pull those, either speak louder or pull the microphone closer, if you will? Sorry, Your Honors, is this better? You can raise the laptop. Okay. Not sure that. The little white button. Oh, the white button. I think. Yeah. That's it. Okay. I'll try to speak louder, Your Honors. That's better. May it please the Court, Hannah Sorokin for the FLEs. I'd like to start, I mean, in reverse with the last points that my friend here made on the Stigma Plus claim, because virtually everything she just said is not in the complaint. What's in the complaint here, she says that she learned well after the fact, about a year after her employment was terminated, that she had a problem code designation. She concedes she didn't know what for. She says she was not told why. She does not allege how she learned of that. And she also alleges that this sort of colloquial term, problem code, is part of the DOE HR, an internal HR database. Isn't it reasonable to infer on a motion to dismiss, as your friend argues, that a future prospective employer, on inquiring to the city about the reason for her departure, would be told that she has this code, which is for incompetence or misconduct, and that that would be sufficient to sustain the Stigma Plus claim at this stage? Why isn't that a reasonable inference that we'd be required to draw in her favor? Sure, Your Honor. I mean, to start, just looking at the four corners of the complaint, her own allegations, again, she alleges that she doesn't know the basis for what this, what the basis of the problem code is. She speculates that it's related to her vaccination status, but she never actually alleges that she knows that. And that's a key component. She needs to sufficiently plead Stigma Plus. She needs to plead both the Stigma and the Plus. So on a Stigma prompt, she needs to plead falsity. She hasn't even alleged what the basis of the problem code is. She, therefore, cannot plead that it was false and that it's public. And she pleads here that this is an internal database. She also does not allege that she, the Plus element, that she sought any outside non-DOE employment and was denied on that basis. Right. She has to allege that the code actually makes her ineligible to work for not only the Department of Education, but any other employer, correct? Correct. And what you're saying is she hasn't alleged that. Correct. She hasn't alleged that she sought any other employment within DOE or external, any non-DOE funded position. She hasn't alleged basically any of the Plus element, any harm as a result of this alleged Stigma Plus. And in terms of falsity, is your argument that because she refused to vaccinate that the code, whatever that problem code is, the failure to vaccinate, is your claim that that's true? Well, our argument here is that she hasn't pled anything really related to that. She hasn't pled the basis for the problem code, so there's no way to know. I mean, if we take her speculation that it's related to the vaccination, then I would argue that that is not a provably false statement. If we were to look at the documents that my friend referenced outside of the complaint, those declarations, they don't save her claim here. DOE, in the Kane case, submitted a declaration that's also in the record, I believe beginning on page 60, from a deputy director in human resources and DOE. She explained that problem code is a colloquial term. It applies to a variety of different potential flags on someone's file. And so just saying that there is a problem code doesn't say really anything about what the potentially stigmatizing statement could have been here. She also explains that those codes are part of an internal database. They're not public. And that there was a separate designation made for vaccine-related compliance. I think she alleges that they would be made not public generally, but available to an inquiring prospective employer, which seems like a reasonable inference. Is that not a reasonable inference? Not here. First of all, I'll just note again, that's not in the complaint at all. She doesn't allege that an outside employer, that comes from her opposition to the city. And that's really a threshold matter here. She didn't really raise, as the district court found, she didn't raise stigma plus in the complaint. Can you address the issue that she then claims if she had been given the opportunity to file an amended complaint, she would have included those allegations? The amended complaint here, as Your Honors noted, the only thing we have in the record here is in her letter in response to the city's request for a pre-motion conference. She says she thinks she has, that she can file an amended complaint as of right. But she never did. And she never, as Your Honors noted, she never filed a motion for leave to amend. And she never attached a proposed amended complaint. And she was represented by counsel? Correct. She was represented by counsel. So there was never a request here for leave to amend, not a proper one by any means. She never attempted to amend as of right. So there's no improper denial here. Can you get to the First Amendment claim? Certainly, Your Honor. And I want to address the issue of, ask you about your appellant's response to the question about undue hardship. That, you know, the city claims, and we have cases, specifically the case I mentioned, about because the vaccine was a mandate, schools had no choice that it would be an undue hardship to grant the exemption or to not vaccinate. How do you respond to your appellant's claim about that? Well, I think as Your Honor mentioned, the New Yorkers for Religious Liberty case, that recent decision here, that controls. I mean, that is essentially factually very similar here. You have specifically classroom teachers, as she alleges she was a classroom teacher, who sought an exemption entirely from the vaccination. She wanted to not need to be vaccinated and still teach in the classroom. And DOE denied that request on undue hardship grounds, the same as was the case in New Yorkers for Religious Liberty, because there was no remote learning option that school year, for the 2021-2022 school year. And there was no safe way for an unvaccinated teacher to teach in a classroom with vulnerable, largely unvaccinated students. And that was the same reasoning as in New Yorkers for Religious Liberty. Plaintiff doesn't address that case at all, even in her reply. And that really controls here. Did the school department have any obligation at all to seek an alternative arrangement? And she had been teaching remotely for a period of time during the pandemic, suggesting that she was capable of performing her duties, and some of her duties at least could have been performed remotely. Why doesn't that fact situation modify the undue hardship argument that the city makes? So, as was set forth in our brief, there was a period here where school was taught remotely, when there was no vaccination option. But the preference for student performance is in-classroom instruction. And that was the plan for the 2021-2022 school year, because there was a way to do this safely, thanks to vaccination. And there was no remote option for that school year. I'm speculating here, but it would have just been seemingly chaotic to have students have to transition from an in-person classroom to a remote. Some classrooms might have one teacher in class, one teacher remote. There are, I think, logistically several reasons why that would be the case. That's beyond the record here. But again, this is fully under the ambit of New Yorkers for Religious Liberty. This case has already been decided. I'll also note, I know my time is running short, but on the point of the interactive process, there is no First Amendment requirement for an interactive process. The case she cites is a Title VII case, the Baker case. She has not cited any authority saying that there is required to be an interactive process for a free exercise claim. And I'll also just note, even the ADA context where we see that, the McBride case, in that case, this Court held that there was no requirement for an interactive process where the basis for the denial was undue hardship. And plaintiff has not pleaded any pretext here. She did not even in the complaint plead what the denial was. She just says it was denied. In our decision in Kane about the procedural inadequacy of some of the modifications that have been worked out before New Yorkers for Religious Liberty, we seem to be applying a Title VII standard. Is it your position now that Title VII really has nothing to do with the claims made in this case? Our position is they are separate, that there isn't the interactive process. I believe there was a Title VII claim in Kane, if I'm not mistaken. I believe so. And there isn't here. She's expressly disavowed it. There was some confusion. So I don't believe Kane applied the Title VII to a free exercise First Amendment claim. Okay. Thank you. Thank you. I see my time is run. If there are no further questions, we ask this Court to. Seeing none. Thank you, Counsel. I was going to congratulate you. I was just going to congratulate you on stopping on a red light. Most people don't understand what a red light is. I didn't stop the most promptly, but I did try to. Thank you, Your Honor. You have two minutes for rebuttal. Thank you. Thank you, Your Honor. Thank you, Your Honor. Simply here in Ashford v. Igbo, in the Twombly, under Twombly, here appellants satisfy the burden at the pleading stage. Now, in terms of stigma plus, this is a textbook stigma plus claim. There was a false statement of misconduct impugning her professional reputation, which is a stigma. There was termination and permanent exclusion from employment, which is a plus. There was no process whatsoever. So under Siegel, she did allege stigma plus. In addition to that, under Donato, she received no notice. Now, assuming, Arguendo, that the complaint was deficient, so even with the inferences you should have passed the motion to dismiss, but at the very least, Your Honor, the case should be reversed to give the appellant the opportunity to amend the complaint. Because this case was brought first in state court, it was removed by the city and federal court, and the appellant never had that opportunity. And the court never addressed appellant's request to amend. I mean, usually when that happens, the court will direct appellant to amend or something, but to dismiss it with prejudice. It really greatly damaged appellant, because given the problem code, she's unemployable, and now she doesn't have an ability to make a living, a tenure teacher, and that's very unfair, really, since her life is over in that sense. And in terms of the First Amendment, the city should not be given boilerplate generic denial forms. We're not here challenging the vaccine mandate. We're simply saying that she never had the opportunity to have any fresh consideration of her religious exception request, as mandated here by Kane. For that reason, this case should be reversed, or at the very least, the appellant should be given the opportunity to amend the complaint. Thank you. Thank you. Thank you, counsel. We will take the case under advisement.